MOORE, J.
 

 |2The defendant, Steven Willis, was convicted of two counts of armed robbery by jury trial. He was sentenced to 42 years at hard labor on each count, to run concurrently, and to an additional five years under the firearm enhancement provision of La. R.S. 14:64.3, to run consecutively to the concurrent terms. The sentences were imposed without benefit of parole, probation, or suspension of sentence. For the reasons set forth below, we affirm the convictions and amend the sentences imposed, and, as amended, affirm.
 

 PROCEDURAL HISTORY
 

 Willis was charged by bill of information on April 22, 2009 with two counts of armed robbery in violation of La. R.S. 14:64. After a jury trial, a unanimous jury found Willis guilty as charged on both counts. Willis was sentenced on April 8, 2010, to 42 years at hard labor on each count of armed robbery, to run concurrently. The trial court also ordered a sentence of five | oyears under the firearm enhancement provision pursuant to La. R.S. 14:64.3, to run consecutively to the concurrent terms. The sentences were imposed without benefit of parole, probation or suspension of sentence, with credit for time served. Trial counsel timely filed a motion for reconsideration of sentence on April 12, 2010, which was denied without a hearing on April 14, 2010. Defendant filed this appeal.
 

 FACTS
 

 James Jackson makes his living by selling various items of merchandise such as shoes, purses and clothing out of an SUV. On March 8, 2009, Jackson and his girlfriend, Makema Epting, as well as six minor children, drove in Epting’s Chevrolet Suburban to a location in Monroe known as South Park Circle in response to a phone call Jackson received from a prospective buyer. The unidentified caller, later determined to be the defendant, allegedly wanted to purchase some shoes from Jackson.
 

 Upon arrival at South Park, a man later identified as Jacques Simmons approached the vehicle. Jackson opened the back of the Suburban to show him some shoes. While Simmons distracted Jackson, a masked and armed individual approached. This person cursed and threatened Jackson with a handgun, and later placed the gun to the head of one of the children. Jackson begged for the children, gave the
 
 *364
 
 defendant his wallet, and told Willis that he |4could have everything. The defendant ultimately forced everyone out of the vehicle. Other perpetrators flocked to the SUV to remove merchandise. The defendant then drove off in the vehicle leaving the adult victims and children on the street.
 

 Over the course of the investigation following the robbery, police officers learned that Steven Willis was the masked gunman. Jacques Simmons, the person who approached the vehicle under the guise of buying shoes, admitted his involvement in the crime and stated that Willis was the gunman.
 

 Jackson testified at trial that after receiving the telephone call on March 8, 2009 from someone wanting to buy some shoes, he and Makema Epting and six children, drove to South Park Subdivision in Ept-ing’s 1995 Suburban. There, Jackson met Jacques Simmons and showed Simmons the merchandise he had available for sale from the back of the vehicle. Simmons did not have a gun nor at any time did Simmons point a gun at Jackson. While showing Simmons a pair of shoes, Jackson glimpsed a man wearing a red mask. The masked man put a gun to Jackson’s head and began shouting expletives. The armed perpetrator, later identified as Steven Willis, told Jackson he wanted “everything.” Jackson gave the defendant his wallet.
 

 | ¡¡Willis also threatened one of the children, putting the gun on Jackson’s two-year-old child and telling Jackson, “[l]ay down on the ground or I’m going to blow this little mother Peer’s head off.” At this point, other perpetrators came upon the vehicle and started grabbing boxes out of the back of the SUV. The defendant then put the gun on Makema Epting and the kids started jumping out of the vehicle. All eight occupants made it out of the Suburban before Willis drove off in the SUV. Jackson testified that they were all “shook up” and the whole incident was a “nightmare.” He counted the kids to make sure that they were all accounted for, and then he called the police. The SUV was recovered later that night and Jackson testified that it was trashed and all his merchandise had been taken.
 

 Makema Epting also testified for the state. Although her testimony concerning details of the robbery differs somewhat from Jackson’s, the general recollection of events appears consistent. Epting testified that she saw a person later identified as Simmons walk up to the vehicle and that Jackson went to the back of the SUV to show the merchandise. Next, Epting heard the children screaming. She turned to look toward the back of the vehicle and saw Willis walk up wearing a red mask and brandishing a firearm. When Willis got to the SUV, he told the children to get out and get on the ground. The defendant walked Jackson to the front of the SUV and | ¡¡pointed the gun at him. Willis noticed Epting was still in the front passenger seat and ordered her out of the vehicle. She could not get out of the SUV, because the door had to be opened from the outside, and that was when the defendant pointed the gun at Epting’s child and said he would blow the child’s brains out if she did not get out of the truck. Epting testified that Willis then opened the door and that several children were pushed to the ground by other perpetrators. Epting further testified that her son and niece were still in the SUV as Willis began to drive off; however, she was able to grab them before he got away.
 

 Jacques Simmons, the person who posed as a customer, was charged with armed robbery and conspiracy to commit armed robbery. Simmons agreed to testify for the state. Simmons acknowledged that he
 
 *365
 
 was likely to be offered a lesser robbery charge, Second Degree Robbery, for his truthful testimony in the case.
 

 During an interview with Detective Eric McElroy of the Ouachita Parish Sheriffs Office(“OPSO”), Simmons admitted his involvement in the crime committed on March 8, 2009, and implicated Steven Willis as a participant. Simmons testified that Willis was the one who called Jackson. When Willis returned, he told Simmons and two of Simmons’ friends, |7“come on, we’re fixing to hit a lick.” Willis then ran behind a house and got a ski mask and a gun. Then they began walking through South Park.
 

 Simmons testified that he approached the victim, who asked him if he was the caller who wanted to buy some shoes. He told Jackson “no, but I’ll look at them.” He testified that after talking with Jackson, Willis came around and pulled the gun, at which point Simmons ran off.
 

 The state called several other witnesses over the course of the two-day trial, including Detective McElroy and OPSO deputy John “Brad” Duchesne; also, testimony was elicited from four juveniles who pled guilty in the juvenile system to conspiracy charges in connection with this incident. Near the close of the state’s case, outside the presence of the jury, defense counsel reported to the court that a plea offer had been made to the defendant. However, prior to the state resting its case, Willis chose not to avail himself of the offer and it was thereby immediately withdrawn by the state.
 

 The defense did not call any witnesses, and all 12 members of the jury found Willis guilty as charged on two counts of armed robbery.
 

 DISCUSSION
 

 By his first assignment of error, the defendant contends that the trial court erred by imposing excessive sentences resulting in a total of 47 years | sat hard labor without benefits and without eligibility for diminution of the sentences for good behavior.
 

 Willis argues that the trial court imposed an excessive sentence. Prior to these convictions, he had no felony criminal history as an adult. Furthermore, he was only 18 years old at the time of the commission of these robberies. Willis expressed remorse in his statement to officers conducting the pre-sentence investigative report. He notes that he had little support from his family throughout childhood, being the youngest of 10 children raised only by his mother.
 

 Willis also urges that the lenient plea offer that he refused, which included a 10-year sentencing cap in exchange for a guilty plea to Attempted Second Degree Murder, be considered as a factor for mitigating purposes. Willis asserts that the trial court did not adequately consider the mitigating factors in this case, and the goals of punishment and rehabilitation can best be accomplished with a sentence less than the total 47 years imposed.
 

 The state argues that the trial judge considered all relevant factors in sentencing the defendant, including the factors enumerated under La. C. Cr. P. art. 894.1, as well as aggravating and mitigating factors. It contends that Willis greatly benefited from the “mid-range” sentence under La. R.S. 14:64, and by the imposition of concurrent rather than consecutive ^sentences. The state also notes that the trial judge found there was an undue risk that defendant would commit another crime during a period of a suspended sentence or probation, and that the defendant was in need of correctional treatment or a custodial environment that could be pro
 
 *366
 
 vided most effectively by commitment to an institution.
 

 In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Bradford,
 
 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
 

 LoThere is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Jones,
 
 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, 394,
 
 writ denied,
 
 00-1467 (La.2/2/01), 783 So.2d 385.
 

 Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Hogan,
 
 480 So.2d 288 (La.1985);
 
 State v. Bradford, supra.
 

 The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Thompson,
 
 2002-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Hardy,
 
 39,233 (La.App. 2 Cir. 1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing.
 
 State v. Cook,
 
 95-2784 (La.5/31/96), 674 So.2d 957,
 
 cert. denied,
 
 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.
 
 Id.
 

 The sentencing clause of La. R.S. 14:64 provides:
 

 [[Image here]]
 

 B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
 

 Our review of the record reveals that, prior to imposing sentence upon the defendant, the court recited the relevant provisions of La. C. Cr. P. art. 894.1, reviewed the contents of the presentence investigation report (“PSI”), the defendant’s juvenile record, the entire case file, and all submissions on behalf of the defendant and victims. The court also weighed the evidence and all reports showing the degree of involvement of the defendant. The PSI revealed that these offenses were defendant’s first adult felony convictions; however, he has an extensive juvenile delinquency record including arrests
 
 *367
 
 for unauthorized entry into an inhabited dwelling, theft of goods, simple battery, possession of a firearm on school campus, and disturbing the peace. “Significantly,” the court noted, “defendant was adjudicated a delinquent for the crime of armed robbery and was given an eighteen-month secure custody 1 ^sentence, the very same crime for which the defendant now finds himself convicted.”
 

 The district court found, pursuant to La. C. Cr. P. art. 894.1(A), the following relevant factors: (1) there is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime; (2) the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and (3) a lesser sentence will deprecate the seriousness of the defendant’s crime.
 

 Furthermore, under La. C. Cr. P. art. 894.1(B), the trial court found that Willis’s conduct during the commission of the offense manifested deliberate cruelty to the victim; he knowingly created a risk of death or great bodily harm to more than one person; Willis used threats of or actual violence in the commission of the offense; and he used a dangerous weapon in the commission of the offense. The trial court found that Willis manifested deliberate cruelty to the victims by luring them to the scene of the crime, forcing them out of their vehicle, threatening to kill their minor children at gunpoint with the victims begging for their lives and those of their children, and leaving them in the street with their children while driving off in their vehicle. He knowingly created a risk of death or great 11sbodily harm to more than one person because eight people were involved, six of them being minor children, and Willis threatened to shoot one of them.
 

 The court recognized as mitigating factors the defendant’s youthful age at the time of the offense (he was 18 years old) and his lack of a prior adult criminal record. The PSI revealed defendant’s social history, which was also considered by the court. Willis was the youngest of 10 children born to his mother. He was expelled from Carroll High School for fighting on campus when he was in 10th grade, had never held a job for more than two weeks, had never married, and had not fathered any children. In the “Offender’s Statement” section of the PSI, Willis admitted that he had a gun on March 8, 2009, but notes that he did not shoot anybody and that the gun was “to scare them.” Willis claimed that he and his friends were getting together and he did not know it would turn out the way it did.
 

 Although the 47-year sentence in this case is severe, the law is clear that the trial judge is given broad discretion in sentencing. Regardless of whether or not another sentence may have been more appropriate, the sentence will not be disturbed absent a showing that the trial court abused its discretion. Here, the defendant was given a sentence within the mid-range of 114sentencing for this offense. Considering the particular facts of this case, which included deliberate cruelty by terrorizing an innocent woman and small children, the imposition of such a sentence is not an abuse of discretion by the trial court. Nor do we find, considering the totality of the record, that the sentence imposed is grossly disproportionate to the severity of the offense or shocking to our sense of justice.
 

 Therefore, this assignment of error is without merit.
 

 The defendant filed a pro se supplemental brief that contains two assignments of error. By his first assignment, the defendant contends the trial court
 
 *368
 
 committed error by enhancing each of the 42-year sentences and an additional five years at hard labor to be served consecutively to the 42-year sentence pursuant to R.S. 14:64.3, even though he was not charged with violating R.S. 14:64.3 in the bill of information.
 

 La. R.S. 14:64.3, states, in part:
 

 A. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
 

 | ] ¡Although the bill of information alleged that a gun was used, and the evidence showed beyond a reasonable doubt that a firearm was used in the commission of the armed robbery, the bill of information did not charge Willis with La. R.S. 14:64.3. The bill states that Willis “wilfully and unlawfully, while armed with a dangerous weapon, to-wit: a gun, commit[ed] armed robbery, contrary to the provision of R.S. 14:64.”
 

 We have reviewed the entire record for reference to R.S. 14:64.3. The state did not file any written notice to defendant of its intent to seek enhancement of the sentence’under R.S. 14:64.3. The trial court’s explanation of the case to the venire only referenced La. R.S. 14:64 and not La. R.S. 14:64.3. Also, in addressing the venire, the assistant district attorney provided the definition of armed robbery under La. R.S. 14:64 only and did not mention the firearm enhancement provision of La. R.S. 14:64.3. Furthermore, while .it is clear from the testimony at trial that the dangerous weapon used was a pistol, the jury instructions stated that, the defendant was charged with “Armed Robbery with a dangerous weapon,” and defined a dangerous weapon as any gas, liquid, substance, or instrumentality that would likely cause death or serious bodily harm in the manner used. Finally, the verdict forms listed only armed robbery and the statutory responsive verdicts as possible verdict choices.
 

 11fiThe question presented in the instant case, then, is whether the trial court can invoke the five-year penalty enhancement under La. R.S. 14:64.3 on its own initiative, where the bill of information charged the defendant only with violation of La. R.S. 14:64 (armed robbery) but factually charges that the dangerous weapon used was a firearm.
 

 The seminal case from the Louisiana Supreme Court regarding penalty enhancement statutes is
 
 State v. Jackson,
 
 480 So.2d 263 (La.1985). In that case, the supreme court stated that the mandatory language, “shall serve” in R.S. 14:95.2 and “shall impose” in Art. 893.1, which were at that time penalty enhancement provisions for use of a firearm during the commission of a crime, were neither self-operative nor imperative absent the district attorney’s charging defendant with the use of a firearm or timely moving for enhancement of the sentence.- The court noted that C. Cr. P. art. 893.1 is a sentencing statute which merely limits the court’s sentencing discretion under certain circumstances, and therefore, the statute need not be charged in the bill of information or indictment, but the district attorney must notify the defendant in writing prior to trial of his intent “to invoke Art. 893.1 by calling on the trial judge prior to sentencing to make a finding that a firearm was used in the commission of the charged felony.” By contrast, La. R.S. 14:95.2 defines a criminal activity and provides a supplemental penalty;
 

 
 *369
 
 117therefore the court held that the district attorney must charge the offense in the bill of information.
 

 In
 
 State v. Allen,
 
 496 So.2d 301 (La.1986), the supreme court partially overruled
 
 Jackson,
 
 limiting that decision’s retroactive application, but the court reaffirmed its prospective application and explained its rationale:
 

 When the applicability of a sentencing enhancement statute (Art. 893.1 in this case) depends upon a finding, based on evidence presented at trial, that a firearm was used in the commission of a crime and the defendant’s sentence may be substantially increased as a result of the application of the statute, the due process clauses of the federal and state constitutions mandate that the defendant be notified, in advance of the trial at which evidence of this factual issue is to be presented, of the importance of rebutting such evidence (use of a firearm), even though the evidence is not necessary to prove an essential element of the charged crime. The serious consequences of the finding based on this evidence (even if the judge makes the finding in post-trial proceedings) trigger the requirements of notice at a meaningful time and of an opportunity to be heard on the issue.
 

 Although
 
 Jackson
 
 and
 
 Allen
 
 involved different penalty enhancement provisions (former R.S. 14:95.2 and former C. Cr. P. art. 893.1), appellate courts have applied the same reasoning in
 
 Jackson
 
 to R.S. 14:64.3.
 

 In
 
 State v. Daniels,
 
 2003-1621 (La.App. 3 Cir. 5/12/04), 873 So.2d 822,
 
 writ denied,
 
 2004-1802 (La.11/24/04), 888 So.2d 227, the court |1saffirmed a penalty enhancement under R.S. 14:64.3, holding that a separate jury verdict was not required for enhancement under the statute. Referring to
 
 Jackson, supra,
 
 the court also found that La. R.S. 14:64.3 is more akin to La. R.S. 14:95.2 in that it defines criminal activity and provides for a supplemental penalty. Accordingly, the court concluded that the state was required to list R.S. 14:64.3 in the bill of information.
 

 Following
 
 Daniels,
 
 this court also stated that a failure to statutorily charge (as opposed to factually charge) a defendant prevents any conviction of a violation of La. R.S. 14:64.3 or any enhancement resulting therefrom.
 
 State v. Adkins,
 
 39,724 (La.App. 2 Cir. 6/29/05), 907 So.2d 232,
 
 writ denied,
 
 2006-2514 (La.5/4/07), 956 So.2d 607. Hence, initially our jurisprudence required that La. R.S. 14:64.3 be charged in the bill of information before it could be used to enhance a sentence for an armed robbery conviction.
 

 However, in
 
 State v. Lewis,
 
 2003-1234 (La.App. 4 Cir. 6/2/04), 876 So.2d 912,
 
 writ denied,
 
 2004-1855 (La.11/24/04), 888 So.2d 229,
 
 habeas corpus dismissed
 
 2009 WL 3367055, the requirement that R.S. 14:64.3 must be charged in the bill of information was modified. In
 
 Lewis,
 
 the defendant was not “statutorily” charged with violation |inof R.S. 14:64.3, although he was factually charged with committing an armed robbery with a gun in violation of R.S. 14:64. After the defendant was convicted for the armed robbery but prior to his sentencing, the state filed a motion to invoke sentence enhancement under La. R.S. 14:64.3. On error patent review, the fourth circuit held that the state’s failure to move for sentence enhancement under La. R.S. 14:64.3 for use of firearm in the armed robbery
 
 prior to defendant’s conviction
 
 did not violate defendant’s right to due process and therefore, was not error pátent, where the indictment charged defendant with “committing armed robbery while armed with gun,” and the jury was aware that alleged robbery was committed with a gun since the victim was shot twice.
 

 
 *370
 
 In
 
 State v. Wilson,
 
 2004-1541 (La.App. 3 Cir. 4/6/05), 900 So.2d 287,
 
 writ granted, judgment vacated in
 
 part 921 So.2d 103, 2005-1486 (La.2/17/06), the third circuit held that the trial court was not authorized to enhance defendant’s 10-year sentence for armed robbery an additional five years pursuant to R.S. 14:64.3, where such statute was not recited in the bill of information, and even though the state filed notice of its intent to file a motion to invoke enhancement penalty provisions pursuant to La. C. Cr. P. art. 893.1(A).
 
 [1]
 
 The court of appeal reasoned that the state’s “notice” that it intended to file a motion for enhancement under C. Cr. P. art. 893.1 was ineffective because the state never actually filed a subsequent motion required by the language in the statute,
 
 “shall file a motion.”
 
 The appellate |2ncourt also vacated the five-year penalty enhancement imposed by an amended trial court judgment under R.S. 14:64.3, noting that it was not charged in the bill of information.
 

 The supreme court granted the state’s writ application. In a
 
 per curiam
 
 opinion, the supreme court stated that the state “followed the requisite procedure for invoking the firearms enhancement provisions of La. C. Cr. P. art. 893.3 when it filed written notice of its intent pursuant to Art. 893.1(A) to invoke the enhancement provisions of that statute”. A second motion was not required. However, the court reinstated the trial court’s original 12-year enhanced sentence under C. Cr. P. 893.1, not the 15-year enhanced sentence under R.S. 14:64.3, stating that the trial court could not amend or modify its original sentence imposed under Art. 893.3 in light of the enhancement provisions of R.S. 14:64.3.
 

 Finally, in
 
 State v. Robinson,
 
 947 So.2d 783, 06-464 (La.App. 5 Cir. 12/12/06) the fifth circuit held that the trial judge erred in enhancing defendant’s sentence under LSA-R.S. 14:64.3 when the state did not file written notice that it intended to seek enhancement of the sentence under LSA-R.S. 14:64.3, nor did it charge the defendant with a violation of that statute in the bill of information. The court distinguished the facts of its earlier ruling in
 
 State v. Walker,
 
 01-51 (La.App. 5 Cir. 5/30/01), 789 So.2 86,
 
 unit denied,
 
 2001-1922 (La.5/10/02), 815 So.2d 834, wherein it found no procedural due process violation where the bill of information clearly alleged that the armed robberies had been committed with a gun,
 
 and the state filed mitten notice to defendant prior to trial that it intended to utilize the provisions of LSA-R.S. U:6Jh3.
 
 (Emphasis supplied.) Significantly, the
 
 Robinson
 
 court noted the language of
 
 State v. Jackson, supra,
 
 that the statutory provisions “shall serve” (R.S. 14:95.2) and “shall impose” (Art. 893.1) were neither self-operative nor imperative absent the district attorney’s charging defendant with the use of a firearm or timely moving for enhancement of the sentence.
 

 Additionally, our research has revealed several other more recent unpublished opinions from other circuits that have followed the holding and reasoning of
 
 State v. Robinson, supra,
 
 which requires that the state either charge the violation of R.S. 14:64.3 or file notice of intent to invoke the provisions of that statute.
 

 Therefore, we conclude that the trial court erred when it imposed the penalty enhancement of R.S. 14:64.3 where the state neither statutorily charged the defendant with a violation of R.S. 14:64.3, nor filed notice of its intent to invoke the pro
 
 *371
 
 visions of that statute. As stated in
 
 State v. Jackson, supra
 
 and
 
 State v. Robinson, supra,
 
 the statute is neither self-operative nor 12gimperative absent the district attorney’s charging defendant with the use of a firearm or timely moving for enhancement of the sentence. We distinguish the instant facts from those in
 
 State v. Johnson,
 
 43,192 (La.App. 2 Cir.2008), 981 So.2d 253,
 
 writ denied,
 
 2008-1279 (La.2/6/09), 999 So.2d 770, on grounds that the defendant in that case was convicted by virtue of a plea bargain that included a sentencing cap. The sentence imposed, including the enhancement, was within the sentencing cap. We held that there was no due process violation under the particular facts of that case because the bill of information charged that the dangerous weapon used in the armed robbery was a firearm and, significantly, during the
 
 Boykin
 
 colloquy, prior to accepting the defendant’s guilty plea, the court informed the defendant that it intended to impose the five-year sentence enhancement and the defendant had an opportunity to discuss the matter with his attorney. Although we concluded that Johnson was not denied due process, we noted in the opinion that “[t]he better practice would be for the district attorney to charge the defendant on the bill of information that the defendant did commit the armed robbery on the victim while armed with a firearm ‘contrary to La. R.S. 14:64 and 64.3,’ or file written notice in advance of trial or the guilty plea proceeding that it intends to seek enhancement of the sentence under LSA-R.S. 14:64.3.”
 

 1 ^Accordingly, we vacate the enhancement penalties of five years at hard labor for each armed robbery conviction and amend the sentences to concurrent terms of 42 years at hard labor without benefit of probation, parole or suspension of sentence.
 

 By his second pro se assignment of error, the defendant contends the trial court violated his due process rights by relying on necessary elements of the offense as aggravating circumstances in imposing the sentence.
 

 In sentencing the defendant, the court found the following specific factors relevant under La. C. Cr. P. art. 894.1(B):
 

 (1) The offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim.
 

 (5) The offender knowingly created a risk of death or great bodily harm to more than one person.
 

 (6) The offender used threats of or actual violence in the commission of the offense.
 

 (10) The offender used a dangerous weapon in the commission of the offense.
 

 Notably, factors (6) and (10) resemble elements of the offense of Armed Robbery as provided for in La. R.S. 14:64, which reads, in part:
 

 A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
 

 In
 
 State v. Case,
 
 42,095 (La.App. 2 Cir. 5/23/07), 957 So.2d 917,
 
 writ not considered,
 
 2007-1320 (La.1/7/08), 972 So.2d 1150, we affirmed the conviction and sentence under similar facts. The defendant pled guilty to armed robbery and was sentenced to 40 years at hard labor, plus an additional five years at hard labor for using a firearm during the crime. The trial court applied, among others, the following factors under La. C. Cr. P. art. 894.1(B): (1), (5), and (10).
 
 Case
 
 argued that the trial court’s findings of various factors under paragraph B of La. C. Cr. P. art. 894.1 were misplaced or inaccurate.
 

 
 *372
 
 We noted that, although the trial court’s findings on some of the factors are either thinly supported by the evidence or subsumed in the charge of armed robbery with a firearm, the record reflected that the trial court gave careful consideration to the seriousness of this offense and the potentially life-threatening consequences of the defendant’s crime. This type of offense, committed with a firearm in a public place, can easily escalate to an even more violent situation where the robbery victim or innocent bystanders may be injured or killed.
 

 In the instant case, the trial court noted that Willis manifested deliberate cruelty to the victims by luring them to the scene of the crime, forcing them out of their vehicle, threatening to kill their minor children at | ^gunpoint with the victims begging for their lives and those of their children, and leaving them in the street with their children while driving off in their vehicle. The defendant knowingly created a risk of death or great bodily harm to more than one person because eight people were involved, six of whom were minor children, and Willis threatened to shoot one of them. These findings are illustrative of the factors used by the court in sentencing the defendant under La. C. Cr. P. art. 894.1(B). The testimony adduced at trial supports the court’s findings, and it is apparent that the court gave careful consideration to the seriousness of the offense committed by the defendant.
 

 Consistent with this court’s findings in
 
 Case,
 
 the fact that some of the factors under La. C. Cr. P. art. 894.1(B) are subsumed in the charge of armed robbery does not dictate that such factors should not be considered in sentencing. The trial judge took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1, and the sentence imposed is well within the statutory limits for armed robbery.
 

 This assignment of error is therefore without merit.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction is affirmed. We amend the defendant’s sentences to vacate the five-year | ^enhancement pursuant to La. R.S. 14:64.3, and the 42-year concurrent sentences are affirmed.
 

 CONVICTION AFFIRMED; SENTENCE AMENDED; AS AMENDED, AFFIRMED.
 

 [1]
 

 . The state mistakenly listed the penalty enhancement statute as La. C. Cr. P. art. 893.1 instead of the newer amended statute, C. Cr. P. art. 893.3, and then at the sentencing hearing, referenced the R.S. 14:64.3 penalty enhancement instead.