Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,932-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

TRABILLION HAWTHORNE                  Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 361835

Honorable Charles Gordon Tutt, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward Kelly Bauman


JAMES EDWARD STEWART, SR.            Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
WILLIAM C. GASKINS
Assistant District Attorneys

* * * * *


Before MOORE, STEPHENS, and ROBINSON, JJ.

ROBINSON, J.

Trabillion Hawthorne appeals his armed robbery conviction and habitual offender sentence of 33 years at hard labor without benefits. We affirm his conviction and habitual offender adjudication, but vacate his sentence as illegally lenient and remand for resentencing.

**FACTS**

On the morning of September 28, 2016, Deborah Coleman and LaToya Taylor arrived for work at the Wyndham Garden hotel located on East 70th Street in Shreveport, Louisiana. Coleman was the general manager of the hotel. Taylor was the front desk manager.

Surveillance video from several cameras at the hotel captured the following incident. At approximately 7:28 a.m., a dark-skinned male wearing a dark hoodie and gloves entered the hotel through a side entrance. He approached Coleman at the check-in counter, pointed a silver revolver at her, and handed a plastic bag to her. Taylor was standing nearby at her work area at the time. Both women opened their cash drawers. Because Coleman's drawer was empty, she pointed to Taylor, who had a drawer containing cash. The suspect moved to the counter area across from Taylor and pointed the revolver at her as she handed cash and coin rolls to him. The suspect then fled from the hotel through the side entrance.

Anthony Moore, a hotel employee who witnessed the robbery, watched the suspect leave the hotel, run across the parking lot, and then go behind a nearby business. Moore thought the suspect threw something in a dumpster behind the business. Moore observed the suspect run across a street to the Haystack Apartments complex before losing sight of him.

Officers from the Shreveport Police Department ("SPD") who were called to the scene were advised that the suspect was a black male about 5'9" with a slender build and wearing a hoodie jacket, black pants, and gloves. Nothing was found in the dumpster behind the restaurant. A police K-9 unit tracked a suspected car but it did not amount to anything. A suspect was not developed that day. A few days later, a detective received a tip about an individual, but that individual did not resemble the robber on the surveillance video.

Two years later, in October of 2018, Wyosha Scott, who was the former girlfriend of Hawthorne, posted a photo of Hawthorne on Facebook next to a photo of the suspect from the Wyndham robbery. This information was forwarded to Cody Roy, an investigator with SPD's armed robbery unit. After Roy found a photo of Hawthorne and compared it to the video, he thought Hawthorne was the suspect.

On October 16, 2018, Roy obtained an arrest warrant for Hawthorne, who was taken into custody on that date. Hawthorne told Roy that he was living in the Haystack Apartments on September 28, 2016. Using a law enforcement database for pawned items, Roy found that Hawthorne had sold a chrome revolver two months after the robbery. A photo lineup was shown to Coleman, who identified Hawthorne as the person who had robbed her.

Hawthorne was charged by an amended bill of information with committing armed robbery on or about September 28, 2016, in violation of La. R.S. 14:64 in that he "took a thing of value belonging to another from the person of another or in the immediate control of another, namely Deborah Coleman and Latoya Taylor, by the use of force or intimidation while armed with a dangerous weapon, to wit: Revolver."

2

*Trial*

A jury trial was held on January 28, 2020. SPD Corporal David McClure testified that it appeared to him from watching the video that the suspect had been armed with a silver .38 revolver. McClure recognized Hawthorne in court as the suspect in the video. McClure did not go to the dumpster behind the restaurant as part of his investigation, but he testified that no clothing was found in it and no gloves were recovered. McClure also related that a K-9 unit had tracked a suspected car, but nothing came of it. He was unaware if the owner of that car was ever questioned.

SPD Lieutenant Joseph Dews went to the Haystack Apartments complex when he first arrived. Dews testified that when he looked in a grassy field behind the restaurant and adjacent to the hotel, he saw that the dew in the grass had been disturbed from a trail of footprints. He found the dumpster empty. No article of clothing or anything of that nature was in it.

SPD Corporal Eric Boughton testified that upon responding to the armed robbery, he was posted at one of the hotel doors before going to watch the alley where the dumpster was located. He did not believe anything was found in the dumpster when it was searched.

Joshua Mayfield was a detective assigned to SPD's armed robbery unit and was the on-call investigator on the date of the robbery. He testified that a suspect was not developed on that date. He observed the video at the hotel and thought the suspect was armed with a chrome revolver. He also spoke with Coleman, Taylor, and Moore at the hotel, and he testified concerning the description of the suspect that he received. He also testified that he believed the plastic bag was recovered and thought it was turned over to the crime scene technicians, but was unsure if any testing was done on it.

3

Mayfield stated that a tip concerning a suspect named Tony Kent was received, but Kent looked nothing like the robber and was easily excluded as a suspect. He knew that the K-9 unit had been called out to the scene, but he acknowledged that he did not remember that the dog had alerted on a car with Texas tags. He did not know where that car was located or to whom the car was registered.

Deborah Coleman testified that she could see the suspect approaching her when she looked at a mirror showing the hotel's side entrance. She recalled that the suspect pulled a silver revolver out, stuck it in her face, and said, "Give me all your money." After she picked up her money tray to show him that she did not have any money, she pointed to Taylor and said that Taylor had some money. She then instructed Taylor to open her drawer and give the money to the robber, which Taylor did. Coleman stated that a little over $300 was taken. She last saw the suspect when he exited through the side door.

Coleman testified that she would never forget the robber's eyes and mouth. When presented with the photo lineup, she circled Hawthorne's photograph because of his eyes and mouth. She also identified Hawthorne in court as the person who had robbed her. Coleman downloaded the video of the robbery to her phone and acknowledged that she had watched it a lot. However, she denied that she was shown the video prior to viewing the lineup. She also denied that she watched the video on the day that she looked at the lineup. She asserted that she did not need a video to recognize the robber. She related that the police were surprised when she went to Hawthorne's photo first and told her that she had a good memory. She replied to them that she could not forget the person who had put a gun in her

4

face. Coleman testified that she had never seen the suspect prior to the robbery. She denied that she ever told anyone that Hawthorne was not the person who had robbed her.

LaToya Taylor recalled that when she arrived at the hotel on the morning of the robbery, she saw a person who ended up being the robber smoking a cigarette outside, but she just assumed that he was one of the oil field workers who often stayed at the hotel. She did not remember if she told this to the police. Describing the robbery, Taylor testified that the robber pointed the gun at Coleman, threw the bag across the counter, and said, "Give me all your money." When Coleman turned to her and told her to give all of her money to him, the robber came over to her and pointed his gun at her. She gave him all of the money that she had in her drawer, including rolls of change, which amounted to over $300.

Taylor, who identified Hawthorne in court as the person who robbed her, testified that she had seen the surveillance video since the incident. She also stated that she had gotten a good look at the robber during the robbery. Taylor denied that she had told others in July of 2019 that Hawthorne was not the individual who had robbed her. She explained that a person she thought was Hawthorne's mother-in-law had been at the hotel for a function and started talking about the case. Taylor told her that she was ready for the case to be over and did not want to be involved.

Anthony Moore, a hotel employee, testified that he was coming out of an office when he noticed that a man who had passed him was walking quickly and wearing a full hoodie. Moore considered it unusual for the man to be wearing a full hoodie at that time. When Moore looked around a corner, he noticed that the man had a gun pointed at Coleman and was

5

asking for money.  He then saw the man point the gun at Taylor.  The robber left the building after Taylor gave him the money that she had in her register.  Moore followed the robber to ensure that he left the hotel parking lot.  Moore observed the robber cross into another parking lot, go behind a business, and approach a dumpster.  Moore thought the robber threw clothing into the dumpster.  Moore lost sight of the robber when he went across the street to the Haystack Apartments.  Moore testified that he did not get a good look at the robber's face because all he could see was the hoodie from the side and the robber was covered up.  He could not say that he would be able to identify the robber by his face.  Moore told the police officers and detectives on the day of the robbery that he observed the robber put what he thought was clothing in the dumpster.

Amber Hyde is the regional manager for Top Dollar Pawn.  She examined the pawn shop's records for the name "Trabillion Hawthorne" and found a pawn shop ticket with his name.  The pawn shop ticket was admitted into evidence over the objections of defense counsel.  The ticket shows that someone identified as Trabillion Hawthorne, who resided at 7000 Fern Ave in Shreveport, pawned a Charter Arms Undercover chrome .38 special revolver on November 14, 2016.  The ticket lists a birthdate and a driver's license number for Hawthorne.

Hyde explained to the jury that when someone tries to pawn a gun, they ask for identification to verify that the photo on the identification is the person pawning the item.  At the time, the pawn shop had a system to photograph the person, but they cannot now access the photos because the system is no longer operating.  They did not take a thumbprint.  Hyde had no independent recollection of the person or the transaction.

6

Cody Roy, an investigator for SPD's armed robbery unit, testified that he was assigned the case in October of 2018 and at the time he reviewed the earlier police reports concerning the case. He did not know the name of the owner of the Honda that the K-9 unit had tracked in 2016.

Roy described the surveillance video as showing a black male armed with a revolver. Roy testified that on the morning of October 16, 2018, he received information that the suspect on the video went by the name of Trabillion Hawthorne. Wyosha Scott, Hawthorne's former girlfriend, had posted on Facebook that Hawthorne resembled the robbery suspect, and this information was forwarded to him by another law enforcement officer. Roy never saw Scott's original post, but based on what the officer told him, he thought the post contained a still shot of the robbery itself provided by Crime Stoppers.

Roy spoke with Scott on October 16 and learned that Hawthorne and Scott had been in a relationship that had ended. Roy discerned that there was bad blood between Scott and Hawthorne. Roy later learned that Hawthorne had married someone else.

Roy determined that Hawthorne was the person in the video when he obtained a photo of Hawthorne and compared it to what he saw on the video. He obtained a warrant for Hawthorne and arrested him on October 16. Hawthorne told Roy that Scott had sent him threatening text messages and that there was bad blood between the former couple. Although he was arrested at his home on Hollywood, Hawthorne told Roy that he lived at the Haystack Apartments at the time of the robbery. The Haystack Apartments are located at 7000 Fern Ave. in Shreveport. Following Hawthorne's arrest, Roy determined that Hawthorne had pawned a chrome revolver. A photo

7

lineup was performed on October 17, and Coleman identified Hawthorne as the person who had robbed her. Contrary to Coleman's earlier testimony, Roy testified that he showed the surveillance video to Coleman shortly before she viewed the photo lineup to help her remember what had happened. Roy also identified Hawthorne in court.

After the State rested, the defense called two witnesses. Wyosha Scott testified that she and Hawthorne had two children together from an on-again and off-again relationship which lasted from 2009 until the end of 2016. In October of 2018, she posted a photo on Facebook of Hawthorne next to a photo from the robbery and asked if Hawthorne looked like the suspect. Scott claimed that she did it as a joke to see how others would react, and that she quickly deleted her post. She acknowledged that there was bad blood between her and Hawthorne in 2018. She had sent him a text message in 2016 stating that nobody could have him if she could not have him.

Ciara Hawthorne married the defendant on September 7, 2018. She testified that she had arguments with Scott before the marriage and then for a month after the marriage. Scott sent her text messages and showed up at her home and at her place of employment. Scott threatened to make trouble for the couple. Mrs. Hawthorne also testified that one of the hotel clerks approached her, her mother, and her mother-in-law at one of the court appearances and told them that she did not want anything to do with the case.

On January 28, 2020, Hawthorne was convicted as charged of armed robbery. The jury was polled and the verdict was unanimous. Hawthorne's counsel filed a motion for a new trial and a motion for a post-verdict

judgment of acquittal in which she argued that the evidence was insufficient to show that Hawthorne was the individual who robbed Coleman and Taylor. On March 9, 2020, the trial court denied both motions.

On June 25, 2020, the State filed a second-felony habitual offender bill of information against Hawthorne. The State alleged that Hawthorne was convicted on January 11, 2012, in Caddo Parish for the December 2, 2011 crime of purse snatching in violation of La. R.S. 14:65.1. Hawthorne had been sentenced to four years at hard labor for that conviction.

Hawthorne was adjudicated a second-felony offender. At the sentencing hearing, the trial court stated that it found the provisions in paragraphs one, two, and three of La. C. Cr. P. art. 894.1(A) to be applicable. The court also considered the mitigating and aggravating factors in art. 894.1(B), and concluded there were no mitigating factors. The aggravating factors found by the trial court were that Hawthorne knowingly created a risk of death, he used threats of violence by using a gun, and he took money during the commission of the crime. Finally, the trial court stated it was required to sentence Hawthorne to at least 33 years at hard labor without benefit of probation, parole, or suspension of sentence. That was the sentence rendered.

On July 22, 2020, Hawthorne's counsel filed a motion to reconsider his habitual offender sentence. Counsel asked the trial court to consider that Hawthorne was only 26 years old. Counsel also contended that the sentence was constitutionally excessive. The motion to reconsider sentence was denied.

On August 5, 2020, Hawthorne filed a motion for an appeal.

9

## DISCUSSION

### *Sufficiency of the evidence*

Hawthorne's counsel argues on appeal that the trial court erred in denying his motions for a new trial and for a post-verdict judgment of acquittal. Counsel contends that the State did not prove beyond a reasonable doubt that Hawthorne was the individual who committed the armed robbery. Counsel complains that the identification of Hawthorne was tainted under the circumstances because of prior exposure and bias. More specifically, Coleman picked Hawthorne from a lineup after seeing the surveillance video that she had downloaded to her phone, and Taylor identified him in court after also seeing the surveillance video.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d

62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d 331. A reviewing court affords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156; *State v. Broadway*, 53,105 (La. App. 2 Cir. 1/15/20), 288 So. 3d 903, *writ denied*, 20-00372 (La. 7/24/20), 299 So. 3d 78.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Green*, *supra*; *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 12-2667 (La. 5/24/13), 116 So. 3d 659. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78; *State v. Gullette*, 43,032 (La. App. 2 Cir. 2/13/08), 975 So. 2d 753. Such testimony alone is sufficient even where the State does not introduce medical, scientific, or physical evidence. *State v. Larkins*, 51,540 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1220, *writ denied*, 17-1900 (La. 9/28/18), 253 So. 3d 154. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Casey*, *supra*.

11

When a defendant claims he was not the person who committed the offense, the *Jackson* standard requires that the prosecution negate any reasonable probability of misidentification. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486; *State v. Green*, 38,335 (La. App. 2 Cir. 5/12/04), 873 So. 2d 889, *writ denied*, 04-1795 (La. 11/24/04), 888 So. 2d 227. Positive identification by one eyewitness or victim may suffice to support a conviction. *State v. Taylor*, *supra*.

La. R.S. 14:64 defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

In an armed robbery prosecution, it is not necessary to prove that the property taken belonged to the victim. Rather, it is only essential that the accused was not the owner and that the victim had a greater right to possession of the property at the time of the taking than did the accused. *State v. Douglas*, 52,582 (La. App. 2 Cir. 4/10/19), 268 So. 3d 372.

Hawthorne's appeal counsel questions the reliability of Coleman's and Taylor's identifications of him primarily because: (i) they would have only seen the robber for only a couple of minutes and their attention would have been diverted by the gun pointed at them; (ii) it was two years between the robbery and when the lineup was presented to Coleman; (iii) it was more than two years between the robbery and when Taylor identified Hawthorne in court; and (iv) both Coleman and Taylor watched the video many times before first identifying Hawthorne as the robber.

This argument is without merit. Under these circumstances, viewing the video would not have tainted their identifications. Instead, the video

12

may have helped Coleman and Taylor remember details of the robbery that they might have otherwise forgotten. The video aside, both Coleman and Taylor had ample opportunity to remember Hawthorne's distinguishing features as he held a gun to their faces and demanded money. Notably, Coleman testified that she would never forget the robber's eyes and mouth. Moreover, the robbery did not occur in a dimly lit parking lot at night but in what is apparently a well-lit hotel lobby.

The jury, which viewed the video, obviously chose to believe one or both of the two crime victims that Hawthorne was the individual who held a gun to their faces while demanding money. There is no question that when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The evidence was sufficient to convict Hawthorne of armed robbery. The trial court did not err in denying the motion for a new trial or the motion for a post-verdict judgment of acquittal.

*Admissibility of evidence*

Hawthorne's appeal counsel next contends that the trial court erred in allowing admission of the pawn shop ticket when it was irrelevant and highly prejudicial. Counsel argues that the ticket depicted a weapon that a juror may have thought was the actual one used in the robbery, and that at minimal, it made Hawthorne appear to be familiar with guns. Moreover, because the pawn shop did not follow its own business practices, it is not possible to determine if Hawthorne was the person who actually pawned the gun.

Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of

13

the action more probable or less probable than it would be without the evidence. La. C. E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C. E. art. 403. Questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Bradley*, 53,550 (La. App. 2 Cir. 11/18/20), 307 So. 3d 369.

The pawn shop ticket is relevant because it was circumstantial evidence that Hawthorne possessed a chrome revolver less than two months after the robbery. Law enforcement officers who viewed the video described the robber as being armed with a silver or chrome revolver. The video is of such clarity that it is not unreasonable for a viewer to draw that conclusion. That description is consistent with the description of the weapon on the pawn ticket. In addition, the pawn shop ticket listed the address of the Haystack Apartments, which was the last place that Moore saw the robber before losing sight of him. This relevance was not substantially outweighed by any prejudice, confusion, or misleading of the jury, if any existed to begin with. The trial court did not abuse its discretion in admitting the pawn shop ticket into evidence.

*Sentence*

Hawthorne maintains that his habitual offender sentence is excessive. He notes no mitigating circumstances were enunciated by the trial court, and no PSI report was ordered. We pretermit any discussion of this issue

14

because our error patent review reveals that the trial court imposed an illegally lenient sentence.

At the time of Hawthorne's offense, La. R.S. 15:529.1 stated, in relevant part:

> A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
> (1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term **not less than one-half** the longest term and not more than twice the longest term prescribed for a first conviction.

La. R.S. 15:529.1(A)(1) was subsequently amended by Acts 257 and 282 of 2017 to read:

> If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term **not less than one-third** the longest term and not more than twice the longest term prescribed for a first conviction.

Emphasis added.

Section 2 of both Acts stated that its effective date was November 1, 2017, and it "shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." Hawthorne was convicted on January 28, 2020.

La. R.S. 15:529.1 was again amended by Act 542 of 2018 to add Subsection (K), which states in its first paragraph, "Except as provided in Paragraph (2) of this Subsection, notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in

effect on the date that the defendant's instant offense was committed." Paragraph (2) refers to cleansing periods.

The armed robbery was committed on September 28, 2016. Under the Habitual Offender Law in existence at the time, Hawthorne faced an habitual offender sentence of "not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. R.S. 15:529.1(A)(1). A person who commits armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. Therefore, as a second-felony offender, Hawthorne faced a minimum habitual offender sentence of 49.5 years at hard labor. Hawthorne was sentenced to 33 years at hard labor without benefit of probation, parole, or suspension of sentence.

A defendant in a criminal case does not have a constitutional right or a statutory right to an illegally lenient sentence. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). This correction may be made despite the failure of either party to raise the issue. *See State v. Williams*, *supra*; *State v. Leday*, 2005-1641 (La. App. 3 Cir. 5/3/06), 930 So. 2d 286.

This Court is not required to correct an illegally lenient sentence. *State v. Dock*, 49,784 (La. App. 2 Cir. 6/3/15), 167 So. 3d 1097. Nevertheless, this Court in its discretion vacates Hawthorne's habitual offender sentence and remands this matter to the trial court to impose a legal sentence.

We note that the trial court believed it was required to sentence Hawthorne to at least 33 years at hard labor, which was the sentence it rendered. Upon resentencing, the trial court should be mindful that as stated in La. R.S. 15:529.1(I): "If the court finds that a sentence imposed under the provisions of this Section would be constitutionally excessive pursuant to the criteria set forth in *State v. Dorthey*, 623 So. 2d 1276 (La. 1993), then the court shall state for the record the reasons for such finding and shall impose the most severe sentence that is not constitutionally excessive."

Hawthorne's appeal counsel notes what he believes is possibly "error patent" in that the trial court failed to impose an additional five-year sentence enhancement under La. R.S. 14:64.3(A), which states:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

Although the original bill of information and the amended bills of information stated that Hawthorne was armed with a revolver when committing the robbery, he was never charged with a violation of La. R.S. 14:64.3. His appellate counsel contends the State should be precluded from complaining about this omission since he was never charged with violating La. R.S. 14:64.3 and he was never given written notice that the State was seeking a sentence enhancement. The State agrees in its brief that Hawthorne was not charged or notified of an enhancement of the charge under La. R.S. 14:64.3, but the State does not otherwise address the issue.

In *State v. Willis*, 45,857 (La. App. 2 Cir. 12/15/10), 56 So. 3d 362, *writ denied*, 11-0150 (La. 6/17/11), 63 So. 3d 1034, this Court considered

17

the question of whether a trial court can invoke the five-year penalty enhancement under La. R.S. 14:64.3 on its own initiative if the bill of information charged the defendant only with violation of La. R.S. 14:64 but factually charged that the dangerous weapon used was a firearm. This Court concluded that the trial court erred when it imposed the penalty enhancement of La. R.S. 14:64.3 when the State neither statutorily charged the defendant with a violation of the enhancement statute nor filed notice of its intent to invoke the provisions of that statute. "[T]the statute is neither self-operative nor imperative absent the district attorney's charging defendant with the use of a firearm or timely moving for enhancement of the sentence." *State v. Willis*, 45,857 at pp. 21-22, 56 So. 3d at 371.

In order to enhance the defendant's sentence under La. R.S. 14:64.3, the State was required to prove that the dangerous weapon used in the commission of the robbery was a firearm. *State v. Love*, 50,238 (La. App. 2 Cir. 1/13/16), 185 So. 3d 136, *writ denied*, 16-0317 (La. 2/10/17), 215 So. 3d 699. The evidence was overwhelming that Hawthorne was armed with a firearm. Nevertheless, in light of this Court's conclusion in *State v. Willis*, we determine that Hawthorne's sentence was not illegally lenient because the trial court did not apply the La. R.S. 14:64.3 enhancement.

### *Error patent review*

We additionally note from our error patent review that Hawthorne was not advised of his rights during the habitual offender proceeding. The failure to inform a defendant of his rights during the habitual offender proceeding is error patent. However, under certain circumstances, the error may be harmless. *State v. Lynn*, 52,125 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1262, *writ denied*, 18-1529 (La. 4/15/19), 267 So. 3d 1129.

18

La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. *State v. Lynn*, *supra*.

In general, the failure of the trial court to advise a defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant's habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant. *Id*.

Hawthorne's habitual offender status was established through the testimony of a fingerprint analysis expert who compared the fingerprints of Hawthorne that were taken in open court to a certified copy of the fingerprint attachment sheet for the bill of information charging him with purse snatching. The fingerprint attachment sheet, bill of information, and court minutes were entered in the record. In sum, the State presented competent evidence to prove that Hawthorne was a second-felony habitual offender. Accordingly, no reversible error occurred.

## CONCLUSION

We affirm Hawthorne's armed robbery conviction and second-felony habitual offender adjudication. We vacate his habitual offender sentence and remand for resentencing.

CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATON AFFIRMED; SENTENCE VACATED; REMANDED.

19