786 So.2d 187 (2001)
STATE of Louisiana,
v.
James M. ORMOND.
No. 00-KA-1371.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
*189 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Allison Wallis, Joan Benge, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Defendant/Appellant.
Panel composed of Judges DUFRESNE, GOTHARD and CHEHARDY.
GOTHARD, Judge.
On May 19,1999, James Ormond was charged, in a two count bill of information, with one count of aggravated burglary of a residence in violation of La. R.S. 14:60 (count 1) and one count of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2 (count 2).
On September 27, 1999, defendant engaged in a Boykin colloquy and then withdrew the pleas of not guilty as to each count of the bill of information and entered pleas of guilty. The court sentenced him to 15 years of imprisonment at hard labor on count 1 and 12 years of imprisonment at hard labor on count 2, concurrent, without benefit of probation, parole or suspension of sentence. The court also ordered defendant to pay monetary restitution to the two victims.
On September 30, 1999 the trial court granted the defendant's oral motion to withdraw his guilty pleas. Defendant went to trial by jury on October 21, 1999, and was found guilty as charged on each count.
Pursuant to a multiple bill, on November 4, 1999, the defendant was adjudicated a fourth felony offender. The court sentenced him on count 1 to life imprisonment at hard labor and on count 2 to 12 years at hard labor, concurrent, without benefit of parole, probation or suspension of sentence. Defendant now appeals. For the following reasons we affirm the defendants convictions and sentences.

FACTS
On April 21, 1999, at approximately 7:30 a.m., Betty Lundgren left her home at 3816 Simone Garden, Metairie, Louisiana. She returned at 4:30 p.m. and discovered the rear patio door, a set of French doors and a bedroom window broken. Cabinets were open in the den and items were strewn around the floor. She discovered several items missing, including two gold chains (one with an opal pendant), a pair of gold earrings, a man's school ring, a second man's ring and some coins. According to Betty Lundgren, no one had permission to enter her house and take her property.
Betty Lundgren called the police and Officer Joseph Lopinto, of the Jefferson Parish Sheriff's Office, took the call. Upon arriving at the residence, Officer Lopinto observed signs of forced entry at the rear patio door and the main interior door. He took a report from the victim.
On the same day, April 21, 1999, at between 9:00 a.m. and 10:00 a.m., Linda Bigner left her home at 3401 Virginia Drive in Metairie. She returned at about 3:00 p.m. that afternoon. As she entered the den and turned towards the master bedroom, she saw a man's shoulder. The male subject turned towards her and he pointed a gun at her. The subject proceeded silently towards the front door and left. Ms. Bigner placed the dead bolt on the door and called the police.
*190 Officers David Angelica and David Mascaro, of the Jefferson Parish Sheriffs Office, responded to the call. Officer Angelica took a report from Linda Bigner. She described her assailant as a white male, approximately 30 years of age, with dirty blond hair. A clothing description was also given. Linda Bigner stated that she had never seen her assailant before this day. She had not given him permission to enter her home and when she left in the morning, the door to the house was locked.
The interior of the Bigner's residence was in disarray, with clothing on the floor and furniture drawers pulled open. A gun holster was on the floor and a gun box was left on the sofa. Linda Bigner reported missing items as consisting of coins, a gun and bullets, a jewelry box, a gun cleaning kit, a round watch and chain, a man's pocket watch and a man's gold wrist watch.
An inspection of the exterior of the home showed that each window along the house to have been pried. There was blood on some of the window frames. A bent garden tool was found outside the house. The Crime Scene Unit of the Jefferson Parish Sheriffs Office removed fingerprints from the rear door and window.
Officer David Mascaro was canvassing the neighborhood when he received a call from the barmaid at The Ski Lodge, a bar located 4 blocks from the Bigner's house. The barmaid reported a gun clip and a watch had been found at the bar. Officer Mascaro responded and spoke with the barmaid, who directed him to the patron who had given her the items and had sought a reward. Before talking to the subject, Officer Mascaro was approached by the lounge maintenance man, Mr. Taylor. Mr. Taylor advised Officer Mascaro that he had been working in the bathroom, where the items were allegedly found, immediately before the suspect entered. There were no items in the bathroom at that time. According to Officer Mascaro, this fact made him suspicious of this individual. Officer Mascaro first observed the suspect and was aware that he fit the description of the man described by Linda Bigner. The suspect was sitting at the bar with some loose change in front of him. Officer Mascaro verified by a radio call to Officer Angelica that currency was taken in the burglary.
The suspect walked to the bathroom and Officer Mascaro followed him. He saw dried blood on the subject's collar and remembered that blood was found at the crime scene.
The suspect tried to leave the bar; however, he was stopped by Officer Mascaro, who patted him down and discovered a.380 automatic handgun in the subject's pocket. Officer Mascaro called Officer Angelica and was advised that the serial number on this gun matched the number on the empty gun box at the Virginia Drive house.
The suspect was handcuffed and advised of his rights. He thereafter informed Officer Mascaro that he had committed burglaries in order to satisfy his need for alcohol and cocaine. Items removed from the subject's person consisted of three gold chains (one with a stone pendant), a handgun, a magazine, a watch and currency.
Linda Bigner was transported to the bar for identification purposes and she identified the suspect as the man she had seen in her home earlier in the day. She also identified items retrieved from the suspect which had been taken from her home.
Three items of jewelry recovered from the suspect were taken to Betty Lundgran's residence and identified.
Fingerprints taken from Linda Bigner's house were later analyzed and found to match those of the arrested suspect.

*191 ANALYSIS

In his first allegation of error, defendant argues that the trial court erred by allowing the defendant to withdraw his guilty pleas.
The record reflects that on September 27, 1999, the defendant, after being fully advised of his rights, entered guilty pleas to both counts of the bill of information and was sentenced accordingly. On September 30, 1999, defendant was scheduled for a multiple bill hearing. Defendant appeared, and he orally moved to withdraw his former guilty pleas. The court initially denied the request, but later allowed the pleas to be withdrawn. Thereafter, the defendant went to trial and was found guilty on both counts. Defendant now complains for the first time on appeal that he should not have been allowed to withdraw his guilty pleas.
The transcript of the hearing reflects that the defendant was repeatedly advised against withdrawing his pleas and also advised of the consequences of such an action, by both the trial court and defendant's IDB attorney. Under these circumstances, the defendant's decision to withdraw the pleas was voluntarily and intelligently made.
The defendant seeks relief from this Court for an alleged error he himself created. The defendant himself, after repeated warning that such action was not in his best interest, moved to withdraw his guilty plea. The trial court granted the defendant's motion, and the defendant now challenges the favorable ruling on his own motion. "A defendant may not cause the error which he later asserts as prejudicial." State v. Bourque, 96-0842 (La.7/1/92), 699 So.2d 1, 12. Accordingly, we find no merit to this allegation of error.
In his second allegation of error, the defendant argues that the trial court erred by denying the defendant's request to represent himself. Defendant alleges that his expressed dissatisfaction with appointed counsel was merely his way of asking to represent himself and the trial court erred in refusing his request.
The State argues that the defendant made no clear waiver of his right to counsel and his request, if made at all, came too late.
The Sixth Amendment of the United States Constitution grants the accused the right to counsel, as well as the right to personally defend himself. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The rights granted under the Sixth Amendment of the United States Constitution are coextensive, in scope, operation, and application with those granted by the Louisiana Constitution, Article I, Section 13. State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367.
Although the accused is guaranteed a right to competent counsel, he is not entitled to counsel of his choice. State v. Wille, 595 So.2d 1149 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1993).
Any objection to appointed counsel, in order to provoke pro se representation, must be knowing and intelligent, so as to demonstrate on the record that it was a choice made "with eyes open." State v. Bond, 94-509 (La App. 5 Cir. 1/31/95), 650 So.2d 354. A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
In this regard, the exercise of rights must be done in a reasonable manner, at a reasonable time and at the appropriate stage of the proceedings. See; State v. Bond, supra. Once the trial has *192 begun, pro se representation is not absolute, but rather rests within the sound discretion of the trial court judge. State v. Seiss, 428 So.2d 444 (La.1983).
The record reflects defendant made several statements throughout the proceedings wherein he sought substitution of appointed counsel. The defendant further filed a written motion for substitution of counsel. The trial court denied these requests. The defendant then made his final objections to counsel on the day of trial. It was at that time that defendant stated that he wished to represent himself. The trial court denied defendant's request.
The only clear and unequivocal requests for pro se representation made by the defendant came on the day of trial. Requests for pro se representation made on the day of trial are addressed to the sound discretion of the trial court judge. State v. Seiss, 428 So.2d 444 (La.1983). In this appeal, defendant has failed to make a showing of abuse of discretion. Considering the disruptive nature and dilatory consequences of a request for pro se representation made on the day of trial, the trial judge did not abuse his discretion in denying the request. The judge did allow the defendant to actively participate, with his appointed counsel, in his defense. Under these circumstances, we find no error in the trial court's denial of defendant's request for pro se representation.
In his last assignment of error, defendant argues that the court imposed an excessive sentence and failed to adequately consider the provisions of LSA C.Cr.P. Art. 894.1. The defendant was sentenced, as a fourth felony offender, to life imprisonment. La. R.S. 15:529.1(A)(c)(ii); La. R.S. 14:2(13)(v). This is the minimum sentence provided.
The federal and state constitutions prohibit the imposition of excessive and cruel punishment. U.S. Const. Amend. 8; La. Const. Art. 1, Sec. 20.
The Habitual Offender Law in its entirety has been found constitutional and, accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. LSA-R.S. 15:529.1. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, citing State v. Dorthey, 623 So.2d 1276 (La.1993).
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, supra; State v. Dorthey, supra. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it, which would rebut this presumption of constitutionality. State v. Johnson, supra; State v. Dorthey, supra. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra; State v. Dorthey, supra. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. State v. Johnson, supra.
In this case, defendant has made no showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment proscribed by the Legislature. We therefore see no error in the sentence imposed by the trial judge.

*193 ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
We note that the sentence as reflected in the minutes is not consistent with the commitment and transcript. While the commitment and transcript indicate the sentence imposed for the conviction on count 2 of the bill of information is 12 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, the minutes do not indicate the sentence imposed for count 2. Where there is a discrepancy between the minutes and the transcript, the transcript will control. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore remand this matter and order that the minute entry of sentencing be amended to reflect the correct sentence.
For the above discussed reasons, the defendant's convictions and sentences are affirmed and the matter is remanded to allow correction of the minute entry.
AFFIRMED AND REMANDED.