MOORE, J.
11 After a jury trial, the defendant, LaD-erick Johnson, was convicted as charged of armed robbery, pursuant to La. R.S. 14:64. He was sentenced to 15 years at hard labor, without benefit of parole, probation or suspension of sentence. Johnson now appeals. For the following reasons, we affirm the conviction and sentence.
FACTS
On August 13, 2013, Shreveport Police were dispatched to the GameStop located at 7141 Youree Drive in Shreveport, Louisiana, on a complaint of an armed robbery. Surveillance tape showed a man dressed in a gray Minecraft T-shirt and red baseball cap enter the store at about 12:00 p.m. Devin Dobson, a female employee at the GameStop, testified that after walking around the. store, the man approached the checkout counter and attempted to purchase M-rated video games. She asked the man for his identification, and he left the store — presumably- to retrieve this from his vehicle; Upon his return, he approached Dobson at the checkout counter and presented his identification. He then brandished .what Dobson described as a large-caliber handgun, and demanded that Dobson give him the money in the cash register, along with four- video games and a pair, of headphones. Dobson complied and the man. left the store. Dobson then called her manager and the police.
When police arrived on the scene, they interviewed Dobson and obtained a number of latent fingerprints from the items and areas that the perpetrator touched. They also viewed the surveillance footage. After comparing the latent fingerprints retrieved at the GameStop, police were 12able to identify them as belonging to LaDerick Johnson. Police compared a photograph of Johnson on file with the man in the surveillance footage and confirmed the man in the surveillance tape was Johnson.
Sergeant Jack Miller of the SPD interviewed Dobson at her home about the robbery. He showed Dobson a six-photograph lineup, but she was unable to identify Johnson positively from the images. Sgt. Miller then showed Dobson Johnson’s driver’s license photograph, which he had obtained from the Department of Motor Vehicles., ,She was immediately able to *1044 identify the picture, and said it was the same one that she had observed on the driver’s license she was handed by Johnson.
. Sgt. Miller filed an affidavit for an arrest warrant for Johnson, who was subsequently arrested in Plano, Texas, after police spotted a stolen vehicle in the parking lot of the Super 8 Motel and' traced it to Johnson, who was a guest in the motel. Learning that a warrant had been issued for Johnson’s arrest Plano police held him on that- warrant. Upon his arrest, police discovered the following items in his vehicle: a pair of headphones, four video games, a gray Minecraft T-shirt, a red baseball cap, and the empty packaging of a BB gun. Plano police discovered a red nylon bag'in Johnson’s motel room that contained a black Umarex BB gun that resembled a .45 cal. handgun. The-items recovered ■ from the stolen vehicle were determined to be the same ones stolen from the GameStop,- and the clothing worn by the suspect in the surveillance video.
Is Johnson was subsequently charged by an amended bill of information with armed robbery, pursuant to La. R.S. 14:64.[1]
Johnson’s attorney moved to suppress the photographic identification and in-court identification by Devin Dobson. According to Johnson, Dobson’s identification was based on a single photograph, and was therefore prejudicial and a violation of his due process rights. After a hearing, the trial judge denied Johnson’s motion to suppress. Trial was scheduled for October 20, 2014. ' ■
Prior to trial, the state offered Johnson a number of plea offers: one for 20 years at hard labor, and one for 15 years at hard labor. Johnson rejected the 20-year deal and, against the advice of counsel, rejected the 15-year deal.
On the day of trial, Johnson refused to change from his orange jumpsuit to street clothes. The court informed Johnson that he would be required bo wear civilian clothes for a jury trial regardless of his .own wishes. Johnson stated that he would like to represent himself because he did not feel safe with his attorney, and said he had filed a complaint with the (Louisiana State) Bar Association. Following a discussion in which the judge assured Johnson that his counsel was competent and the perils of representing himself, Johnson agreed to change clothes and proceed with a jury trial. However, after he changed to civilian .clothes, Johnson told the court he still .wanted his, appointed counsel removed. The court refused ■ the request.
14At trial, Dobson testified that it was Johnson who robbed the GameStop; that she had never seen Johnson prior to the date of the robbery; and that, while she was unable to identify Johnson in a six-person photographic lineup) she was positive that Johnson was the one who committed the robbery.
Johnson testified that he did, in fact, rob the GameStop, but contended that he was not guilty of armed robbery because á toy gun is not a dáñgerous weapon under the statute. On cross-examination, Johnson admitted that the instrument he used during the robbery was a BB gun, and that BBs could cause -harm if Johnson pulled the trigger. He apologized to Dobson and explained that the robbery had occurred at a time when he was battling a serious drug addiction.
The jury returned a verdict of guilty of armed robbery, and Johnson filed a pro se motion for new trial.
Johnson’s appointed counsel appeared in court and filed a 'motion for post-verdict judgment of acquittal. The same day, the *1045 trial judge, denied the motion and, after counsel waived delays, proceeded with sentencing.
After discussing the applicable sentencing factors outlined in La. C. Cr. P. art. 894.1, and reiterating the factual basis for her conclusions, the court sentenced Johnson to 15 years at hard labor without benefits.
Johnson’s counsel filed a motion to reconsider sentence while Johnson filed two pro se motions: (1) a motion for appeal; and (2) an application for post-conviction relief. ’ The trial court denied Johnson’s motion for new trial and the motion to reconsider sentence.
lKOn February 13, 2015, Johnson’s counsel filed this appeal; the trial court later denied Johnson’s application for post-conviction relief. .
DISCUSSION
Appellate counsel’s first assignment of error and Johnson’s pro se assignment of error allege that Johnson was denied his right to represent himself at trial. Counsel argues that the trial court failed to adequately address his request to represent himself, choosing instead to inform him that he did not want to do that. He now complains that it was error for the trial court not to allow him the opportunity, after an appropriate colloquy, to represent himself at trial.
Appellate counsel argues that Johnson clearly and unequivocally stated that he wanted to represent himself at trial. He argues that, rather than conducting an appropriate Faretta colloquy to determine whether Johnson’s request to waive counsel was knowing and competent, the trial judge made the decision for Johnson. As such, Johnson requests that thjs court reverse the conviction and sentence and remand the case..
Johnson also argues, pro se, that he was denied the right to represent himself at his trial. He argues that Judge Dorroh did not permit him to represent himself, despite his repeated requests to either (a) have another attorney appointed or (b) allow Johnson to represent himself.
The staté' responds that Johnson failed to clearly and unéquívocally'request self-representation, and -withdrew his request to represent himself after his discussion with the trial judge prior to jury voir dire on the day of trial.
| (¡Amendments VI and XIV of the United States Constitution, as well as Louisiana Constitution, Art. I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Shumaker, 40,275 (La.App. 2 Cir. 10/28/05), 914 So.2d 1156; State v. Flanagan, 32,535 (La.App. 2 Cir. 10/29/99), 744 So.2d 718.
An accused has the right to choose between the right to counsel and the right to self-representation. Requests which vacillate between self-representation and representation by counsel are ‘ equivocal. State v. Crosby, 43,864 (La.App. 2 Cir. 4/8/09), 6 So.3d 1281, citing United States v. Bennett, 539 F.2d 45 (10th Cir.1976); State v. Strain, 585 So.2d 540 (La.1991); State v. Bridgewater, 2000-1529 (La.1/15/02), 823 So.3d 877.
An indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973). An indigent’s right, to.choose- his counsel extends only so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart 'the admiras- *1046 íration of justice. State v. Reeves, 2006-2419 (La.5/5/09), 11 So.3d 1031.
The right to counsel may be waived, but the accused must know of the right and intentionally relinquish it. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused-may enter into pro se representation, must be clear and 17unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La.1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that “he knows what he is doing and his choice is made with eyes open.” Faretta, supra, citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942). Courts must indulge in every reasonable presumption against a waiver of counsel. Faretta, supra; State v. Turner, 37,162 (La.App. 2 Cir. 10/29/03), 859 So.2d 911, writ denied, 2003-3400 (La.3/26/04), 871 So.2d 347.
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Turner, 37,162 (La.App. 2 Cir. 10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04) 871 So.2d 347; State v. Flanagan, supra. The determination of whether defendant knowingly and -^voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Harper, 381 So.2d 468 (La.1980). A more thorough inquiry is required to allow defendant to represent himself at a felony trial than is required to accept his uncoun-seled guilty plea to an uncomplicated misdemeanor. State v. Strain, supra.
In Strain, the Louisiana Supreme Court stated:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused’s age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.
A jury trial commences when the first prospective juror is called for examination. La. C. Cr. P. art. 761. A defendant who waits until after the commencement of trial to assert for the first time his right to represent himself, after having acquiesced in representation by an attorney throughout pretrial procedures and the institution of trial, cannot thereafter successfully assert that right Unless he makes a showing that the prejudice to his legitimate interests overbalances the potential disruption of the proceeding already in progress. State v. Lee, 39,969 (La.App. 2 Cir. 8/17/05), 909 So.2d 672; State v. Hegwood, supra.
Once the trial date has arrived, the question of withdrawal of counsel rests with the discretion of the trial court, and the court’s ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. State v. Seiss, 428 So.2d 444, 447 (La.1983). Generally, a defendant’s request to represent himself may be properly denied if the defendant makes such a request for the first time immediately prior to trial. State v. Hegwood, supra.
*1047 An inappropriate denial of the right to self-representation is not subject to harmless error analysis; rather, it is a structural error that requires automatic reversal. McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); State v. Hampton, 2000-522 (La.3/22/02), 818 So.2d 720; State v. Shumaker, supra.
In this instance,' the record indicates that the first time- Johnson expressly stated that he wished to represent himself was on October 20, 2014, the day of trial. Immediately prior to voir dire, David McClatchey, Johnson’s appointed attorney, informed Judge Dorroh that Johnson had refused to change out of his prison uniform and into civilian clothing. Judge Dorroh requested to speak with Johnson. The following dialogue occurred (with emphasis added, throughout):
Defendant: Excuse 'me, Your Honor, I would like to represent myself. I think I told yoti that last month when I was in court. When I came in, you kicked me out. I don't feel safe. I don’t really feel safé with this dude representing me. I’already filed a grievance to the Bar Association.[2] I wroté letters. I mean, I don’t even know why he’s still here. I just saw' the video, like, five minutes ago. I have been in jail almost a year. I feel like I’m. being manipulated, railroaded, tricked by this man to try to convict me with this man. So, I mean, I’m still in the blind.
Court: And I understand your concerns. Mr. McClatchey is an excellent attorney. He’s tried many cases before me since I’ve been a judge. He represents his clients to the fullest, and he is not trying to railroad you. I can assure you of that. He’s trying to do his job.
Defendant: Yes, ma’am.
Court: You may not understand that completely because you haven’t been to law school, and you haven’t practiced law or tried any cases, [inokay?
Defendant: Yes, ma’am.
Court: So what you may perceive as him not trying ,to help you, he is trying to help you, and he is trying to represent you and present any defense that you. can present. And that’s very important. That’s his job.
Defendant: Yes ma’am.
Court: He’s done it for a long time.
Defendant: He’s professional.
Court: He’s very professional, okay. . One of. the best I’ve seen, ok, and I’ve been practicing for 29 years before I became a judge, okay?
Defendant: Yes, ma’am.
Court:' So you are in good' hands with Mr. McClatchey, okay?
Defendant: Yes, má’am. I heard about him.
Court: Now, you may not feel that way right now, but I can assure you, you are in good hands, okay? He’ll do everything he can to pick a fair and impartial jury. He’ll do everything he can to present any defense you want him to present, okay?
Defendant: Yes, ma’am. So I don’t get . to pick — I don’t get to pick the jury? I don’t get to pick half?
Court: You will pick with Mr. McClat-chey. You will pick the jury with Mr. McClatchey. * * *
Court: All right. You will pick the jury with Mr. McClatchey. You don’t want to represent yourself, okay?
*1048 Defendant: Why you s,ay that, Your Honor? .
| h Court: Because—
Defendant: I feel like it would be better. Court: Have you been to law school? Defendant: Well, I’ve been studying the law that they give us in the law library.
Court: Well, that’s not the same, okay? Do you know how to lay foundations to introduce evidence? Do you know ' ' how to object to questions? Do you know what the proper objections' are? You don’t know any of that.- And so it’s never a good idea for anybody to represent themselves, ever.
Defendant: Yes, ma’am.
Court: And I would strongly encourage you not to do that, okay, because you’ll be held to the same standards that a lawyer is. The same Rules of Evidence will apply, the same Code of Criminal Procedure will apply. And if the State objects to something that you’re doing .and it’s not proper, I’ll have to sustain it, and that would not be good for you.
Defendant: Yes, ma’am.
Court: Now, you can participate in this trial and present your defense 'with Mr. McClatchey’s help. You can do that. You can pick members of the ‘ jury, or you can — I mean, we’ve got about 40 people waiting downstairs, ready to hear this case:[3]
Johnson then agreed to change into civilian clothes. Upon his return, jury selection began. After 12 jurors had been selected (8 black, 4 white), but before any alternates were selected, the following discussion occurred: . ’
112Pefendant: Your Honor? Excuse me, Your Honor, two things. I would like to request a half black jury. I was told that Caddo Parish is one of the most racist counties .in our nation. And I still want to have Mr. McClat-chey. removed. I’m not impressed with his. work, what he’s doing. I’m not connécting with him. I really don’t, I don’t feel him. I would still like to have him removed from my case Your,Honor. ,
Court: Okay. ■ Well, Mr. Johnson, we. don’t even have our jury yet, so.
Defendant: Yes, ma’am. I understand.- ■ I just wanted to put that out there.
•Court: And it’s on the record, but I’m not going to 'remove your counsel in the middle of jury selection. We have 12‘jurors. We need alternates, so‘we have to have another panel for alternates.
Our review indicates that Johnson did not previously request that he represent himself. However, when he appeared for the previously, set trial dates, September 23, 2014, which was reset to September 24, 2014, Johnson expressed dissatisfaction with his current, counsel and asked the court to .appoint new counsel.
Defendant: Excuse me, Your Honor. I feel like I need help. I don’t really knowing what’s going on. I have been here almost a year. I don’t feel like my attorney’s really looking out for ■ my best interest. I haven’t seen the video—
Court: Okay. Mr. Johnson, Mr. Johnson.
Defendant: Yes, ma’am?
Court: You can plead guilty or go to trial. Two choices. One or the other.
Defendant: I can’t have another attorney?
| tsCourt: No, sir. You can hire anybody you want to. Feel free to hire *1049 anybody you want to, if they can be prepared to go to trial tomorrow.
Defendant: I don’t have a right to have another attorney appointed?• I mean, I don’t feel like he’s looking out for my best interests—
Court: Mr. Johnson, I’m not going to get into whether your attómey is doing his job or not.
Defendant: Well, who do I talk to? ,
Court: It’s my job to monitor that.
Defendant: Well, who ami supposed.to ■talk to? Imean-r . . ■
Court: You can plead guilty or go to trial..- One or the other. That’s all I’m going to talk to you. about right now.
Defendant: I guess I ain’t going,to plead guilty.
Court: All right, we’ll see you for trial in the morning[.]
Trial was reset for the next day. On September 24, 2014, Johnson and Judge Dorroh had the following exchange:
McClatchey: Your Honor, at this time, Mr. Johnson wishes to reject the 15 year offer. That’s against advice of counsel. And we’d like to request that it be set for the October 20th date.
Rodgers: October 20th it is.
Court: October 20th for jury trial.
Rodgers: There will be no more offers, Your Honor. •''
Court: Well, since that one’s been made, like, numerous times,' I wóuld assume n'ot. ' : -
| uDefendant: That’s the first time thát’s been made, Your Honor. I’m in the blind. I don’t really know what’s going on. That’s why I asked for another attorney.
Court: That’s not the first time it’s been made.
Defendant: Well, yesterday was the first offer I was ever told, and then today. It was 20 yesterday, 15 today. And my attorney, he- don’t let me know nothing, .so .1 don’t know what 3⅞11 talk about.,. That was the first offer I got.
Court: Every offer has been made in open court and on the record. October 20, 2014, for jury trial. You can have a seat.
Defendant: Can I have another attorney appointed?
Court: No, you can have a seat is what you cam do.
Defendant: I can’t go to 'trial with this ’ dude though.
Court: Sir—
Bailiff: Sir, step over here.
Court: — have a seat,
Defendant: That’s the—
Bailiff: Hey, hey, keep your mouth shut.
Court:. Hire an attorney. Hire anybody you %mmt. (Proceedings concluded).
During these two exchanges on the day trial was scheduled to begin, Johnson expressed his dissatisfaction with his appointed counsel, asked the court to appoint him a different attorney. The court denied his request to appoint a new attorney; however, it informed Johnson he could hire any attorney he pleased.
|1fiOn October 20, 2014, the reset date of trial, Johnson initially refused 'to change his clothes from prison garb to civilian clothes. He then told'the court that he wished to represent himself. The court gave several reasons why self-representation would not be á good idea and Johnson ultimately appeared to agree to the court’s advice after the court told him he would be able to participate with his attorney in jury selection and his defense. However, after Johnson returned in his civilian clothes, he asked to be tried by a jury that was “half-black” because he had heard Caddo Parish *1050 was one of the most racist counties in America, and, he added,
And I still want to have Mr. McClatchey removed. I’m not impressed with his work, what he’s doing. I’m not connecting with him. I really don’t, I don’t, feel him. I would still like to have him removed from my case Your Honor.
Whether this request to have Mr. McClatchey “removed” is a request to represent himself is not clear, inasmuch as Johnson previously asked the court to remove Mr. McClatchey and appoint him new counsel. On the other hand, his most recent prior request to the court that morning was to let him represent himself.
In State v. Santos, 1999-1897 (La.9/15/00), 770 So.3d 319, the Louisiana Supreme Court held that the trial court erred by denying the defendant his Sixth Amendment right to self-representation where the defendant maintained his request to represent himself, despite the trial judge’s statements and questioning meant to “impress upon him the dangers and disadvantages of self-representation.” Id. at 4, 770 So.3d at 321. The court concluded that the trial record illustrated that Santos was competent to waive counsel, that he did not waver in his request to waive counsel, and [ lflthat his repeated assertions precluded a finding that his requests were merely dilatory. The court said that the trial court could have implemented other alternatives available — such as standby counsel, or a hearing on Santos’s request for substitute counsel — other than simply denying the request.
In State v. Bridgewater, 2000-1529 (La.1/15/02), 823 So.2d 877, however, the court held that Bridgewater’s attempt to assert his right to self-representation was merely dilatory. Prior to his request to represent himself at trial, the trial court twice granted Bridgewater’s request to appoint a new attorney based on his complaints that he did not get along with his attorney and disagreed with his attorney’s trial strategy. The court concluded that the trial court did not abuse its discretion in denying Bridgewater’s request to represent himself.
The facts of the instant case are distinguishable from State v. Santos, supra. In Santos, the defendant filed a written motion and made a request in open court to discharge his appointed counsel and to represent himself a full month prior to trial. He maintained the request despite questioning by the trial judge meant to impress upon him the dangers of self-representation. Most importantly, the defendant in Santos clearly demonstrated his competence to make the decision to waive the right to counsel, which is the gravamen of a Faretta inquiry.[4] Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993); State v. Santos, supra at 321.
|17Unlike the defendant in Santos, Johnson did not make a request to represent himself until the morning of trial, after he refused to change from prison clothes to civilian clothes. Johnson’s previous request was not to represent himself, but to have new counsel appointed. This also occurred on the prior trial date. We conclude that Johnson’s actions, including his refusal to change clothes, appear to be calculated to disrupt the trial proceedings and were likely an attempt to create grounds for a future appeal. Also, we find that his request to represent himself was equivocal at best. He initially accepted the court’s advice that he should not waive counsel. Then, after 12 jurors were select *1051 ed, more than half (eight), of whom were African-American, Johnson told the court that he still wanted his counsel removed just “to put that out there.”
In State v. Ormond, 00-1371 (La.App. 5 Cir. 4/24/01), 786 So.2d 187, the defendant complained about his appointed counsel several times throughout the proceeding, but did not expressly state that he wished to represent himself until the day of trial. Id. at 8, 786 So.2d at 192. On appeal, he argued that his complaints' and expressed dissatisfaction with appointed counsel were the equivalent to a request to represent himself. The court disagreed, holding that Ormond’s requests for substitute counsel were not tantamount to a request for pro se representation. Because Ormond did not unequivocally state that he wanted to represent himself until the day of trial, the court held that the trial court did not abuse its discretion in denying Ormond’s request.
__L^Similarly, in the instant case, Johnson did not express a desire to represent himself until the morning of trial. Johnson’s earlier request for new counsel also occurred on the previous trial date. After the court refused to appoint new counsel, but advised him he' could' hire whomever he wished, Johnson still did not express any desire to waive counsel and represent himself. Not until the next date of trial did Johnson tell the court he wanted to represent himself, coupled with his complaints about Mr. McClatchey.
We conclude that the court did not abuse its discretion or err by denying Johnson’s last-minute request to represent himself. This assignment is without merit.
By his second counseled assignment of error, Johnson alleges that the trial court erred in denying the motion to suppress the photo identification by Devin Dobson, the store clerk, and her in-court identification of LaDerick Johnson. Johnson argues that Dobson was unable to identify him from the six-person photo lineup shown to her, and able to identify him only after viewing the single photograph shown to her by Sgt. Miller. According to Johnson, showing Dobson the' single photograph was unduly suggestive and had the same kind of corrupting effect sought to be prevénted in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
The state argues that Dobson’s identification of Johnson, based on the single photograph was not unduly suggestive. Even if Dobson’s identification was inappropriate, application of the factors in State v. Anderson, 30,306 (La.App. 2 Cir. 1/21/98), 706 So.2d 598, illustrate no [19risk of mis-identification. Furthermore, the state argues that Johnson should not completely dismiss Dobson’s response to the presentation of the six-person lineup, because Dob-son selected the - suspect’s characteristics from three of the six people pictured in the lineup.
To suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. State v. Sparks, 1988-0017 (La.5/11/11), 68 So.3d 435, cert. denied, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012); State v. Martin, 595 So.2d 592 (La.1992); State v. West, 561 So.2d 808 (La.App. 2 Cir.), writ denied, 566 So.2d 983 (1990). When assessing the reliability of an identification, the-following factors'must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s , degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Kemp, 39,358 (La.App. 2 Cir. 3/11/05), 896 So.2d 349, *1052 356, writ denied, 2006-0937 (La.12/09/05), 916 So.2d 1052, citing Manson v. Brathwaite, supra. Even if suggestiveness, is proven by the defendant, it is the likelihood of misidentification,.and not the mere existence of suggestiveness, which violates due process. State v. Williams, 375 So.2d 364 (La.1979); State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. Identifications arising from a single photograph may be viewed in general with suspicion. State v. Sparks, supra. However, the suggestive 120nature of a single-photograph identification will not per se preclude admissibility unless found to be untrustworthy under the totality of the circumstances. State v. Crossley, 48,149 (La.App. 2 Cir. 6/26/13), 117 So.3d 585; State v. Anderson, supra.
The central question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. State v. Sparks, supra, citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Despite the existence of a suggestive pretrial identification, an in-court identification may be, permissible if there does not exista substantial likelihood of irreparable misidentification. Manson v. Brathwaite, supra; State v. Goldston, 35,271 (La.App. 2 Cir. 12/5/01), 804 So.2d 141.
 In this case, shortly before Johnson committed the armed robbery, Ms. Dobson asked him for identification. He left the premises and returned with identification, a driver’s license, which he presented to Dobson.
At the hearing on Johnson’s motion to suppress,, Sgt. Miller testified that hevisit-ed Dobson’s house the evening after the robbery to show her a photo lineup consisting of six photos, one of which was a photo of the defendant. Dobson was unable to identify Johnson’s photo in the six-photograph lineup.- Sgt. Miller , then showed Dobson Johnson’s driver’s license. According to Sgt. Miller, she immediately recognized Johnson as the perpetrator based on the driver’s license photograph.
Following argument, the trial judge denied Johnson’s motion to suppress and concluded that Dobson simply recognized the identification hi card as the one that the defendant presented to her moments before the robbery.
After review, we conclude that the trial court did not err in denying the motion to suppress. Although Dobson was unable to identify Johnson from the six-person lineup, application of the Manson factors, taken together, creates little opportunity for misidentification: Dobson had ample opportunity, to view the defendant prior to and during the crime. Johnson was in the store for approximately seven to ten minutes. The store was well-lit. She also looked at Johnson’s driver’s license at the time of the crime to determine if he was old enough to. purchase the M-rated goods. Dobson looked at the photo identification Johnson presented long enough to read the date of birth printed on the ID and to ensure that Johnson was the same, person as the person pictured in the photograph.
Dobson gave Sgt. Miller an accurate description ”of the robber: an African American male with a medium-to-light complexion; approximately 5'7" and around 150 lbs.; and brown eyes, facial hair stubble, and sideburns.
Although -Dobson-was-unable to pick out Johnson from the six-person lineup presented to :her, she selected identifying characteristics of the suspect in three of the photos in the lineup. When Sgt. Miller showed Dobson the driver’s license photor graph, she immediately identified the man in the picture as the perpetrator.
*1053 State v. Newman, 283 So.2d 756. (La.1973), requires an independent source for an in-eourt identification in the event that an out-of-court identification presents too great a chance of misidentifieation. Even if this] 22court were to conclude that Dob-son’s single-photo identification of Johnson was improper, the record nonetheless supports a finding that Dobson had an independent basis for her in-court identification. She was able to observe Johnson in the GameStop store for several minutes prior to the robbery and had two close-proximity, face-to-face encounters: (1) pri- or to the robbery, when she asked him for proof of age, and (2) when Johnson committed the robbery.
That Dobson ,was unable to identify Johnson from, the six-person lineup is not determinative of improper suggestion or an unlawful risk of misidentifieation as to a later in-court identification. In State v. Birch, 41,979 (La.App. 2 Cir. 5/9/07), 956 So.2d 793, this court stated, “[A] witness’s failure to identify the suspect at a pretrial lineup is not grounds to bar the in-court identification; rather, it affects the weight of the testimony.” Id. at 8, 956 So.2d at 798. Credibility determinations are for the trier of fact, and Johnson does not provide any evidence to suggest that the trial court abused its discretion in giving credence to the testimony of Sgt. Miller. See State v. Jefferson, 606 So.2d 869 (La.App. 2 Cir.1992). Johnson had the opportunity to, and did in fact, cross-examine Dobson about her photographic identification and her in-court identification of Johnson as the perpetrator of the crime. Such cross-examination cured any remnant' of suggestiveness found in Dobson’s identifications.
We conclude that the record supports the finding that Sgt. Miller’s account of Dobson’s identification and Dobson’s testimony as to her identifications were trustworthy; and Dobson was cross-examined as..to her,|^identification at trial. Therefore, the circumstances surrounding Johnson’s identification as the perpetrator negate any reasonable probability of mis-identification.
Finally, even if we concluded that the trial court abused ’its discretion in denying Johnson’s motion to suppress Dob-son’s photo identification and in-court identification, this denial was harmless error. The combination of the surveillance footage and the discovery of particularly incul-patory evidence in Johnson’s car — the items reported stolen from the GameStop, the clothing worn by the robber, and the empty BB gun packaging — suggest that a reasonable jury would have found Johnson guilty of armed robbery, even without Dobson’s identification. Therefore,' this assignment of error is without merit.
By his fourth assignment of error, Johnson alleges that the trial court erred in imposing an unconstitutionally excessive sentence of 15 years at hard labor. He argues that the statutory minimum sentence of 10 years at hard labor was the maximum that would not have violated constitutional mandates regarding cruel and unusual punishment and the meaningless imposition of pain and suffering.
Johnson contends that the trial court incorrectly considered two factors to be aggravating: (1) The use of a dangerous weapon, as an aggravating circumstance even though Johnson used a BB gun rather. than a firearm; and (2) the perception that Johnson created a risk of death or great bodily harm to more than one individual; however, there was no evidence that anyone other than- Dobson was present during the robbery. ^Additionally, Johnson contends that the trial court should not have been permitted to consider the use, of a .firearm or dangerous weapon as an aggravating factor because it is an element of the offense of armed robbery *1054 under La. R.S. 14:64, and aggravating factors are “those elements not common to all persons who commit the offense-in question.”
Johnson also alleges that the court failed to consider certain mitigating factors during sentencing — such as his personal history — because the court did nqt request a presentence investigation (“PSI”).
The state maintains that the trial court carefully considered the factors set forth in La. C. Cr. P. art. 894.1, and a PSI is not a requirement to comply with that article. The trial court had ample information with which to order an appropriate sentence, namely, information pertaining to Johnson’s educational background, employment record, social-history and criminal history., The record, reflects an adequate factual basis for Johnson’s 15-year, hard labor sentence. The state also contends that Louisiana jurisprudence explicitly allows for consideration of the use of a dangerous weapon during an armed robbery. State v. Willis, 45,857 (La.App. 2 Cir. 12/15/10), 56 So.3d 362; State v. Case, 42,095 (La.App. 2 Cir. 5/23/07), 857 So.2d 917, writ not cons., 2007-1320 (La.1/7/08), 972 So.2d 1150.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial coúrt took cognizance 'of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed; remand is unnecessary even where there has not been full compliance with Art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,-350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. 1, § 20,- if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, supra; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).
A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
Because a trial judge is- in the best position to consider the aggravating and mitigating circumstances of a particular case, it is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, *1055 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). Absent a showing of manifest abuse of discretion, an appellate court may not set aside a sentence as excessive. State v. June, 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939. An appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C. Cr. P. art. 881.4 D.
The pertinent parts of La. R.S. 14:64 define armed robbery and penalty range:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
After review, we conclude that the trial judge thoughtfully considered aggravating and mitigating circumstances, in compliance with Art. 894.1., Specifically, the court found that Johnson will likely benefit from substance abuse treatment and a lesser sentence than the one imposed would diminish the seriousness of the crime committed. The court found the following factors to be aggravating:
by* (1) Cruelty to victim: Dobson believed that the gun was real.
• (5) Knowingly created risk of great bodily harm by brandishing a loaded BB gun at Dobson, which had the potential to cause great bodily harm.
• (6) Threats of violence: Johnson brandished a BB gun at Dobson, suggesting that if Dobson did not comply, he would use the weapon to cause bodily harm.
• (19) Use of firearm or dangerous weapon in commission of the offense, which involves a substantial risk that physical force may be used during the commission of the offense.
In á similar mariner, citing Art. 894.1 B, the court considered the following factors to be mitigating:
• (23) Failure to contemplate actual harm: Johnson did not contemplate that brandishing a BB gun would cause actual harm.
• (32) Participation in pretrial drug testing.
• (33) Any other, mitigating circumstances: Johnson admitted to the crime, and apologized to the court and to the victim.
Johnson’s claim that the trial court improperly considered certain factors to be aggravating, demonstrates his misunderstanding of the sentencing guideline on which the trial court relied. La. C. Cr. P. art. 894.1 B(19) states:
The offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which lias, as an element, the use, attempted rise, or threatened use' of physical force against the person or property of another, and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense.
It is. not- necessary that the offender use a firearm; the use of any
“dangerous ■ weapon”- is' sufficient. Louisiana defines a “dangerous weapon” as “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily ■.harm.” .UsLa. R.S. 14:2 A(3). A “dam gerous weapon” is not limited to those instrumentalities which are inherently dangerous. State v. Bonier, 367 So.2d *1056 824 (La.1979). The determination of whether an instrumentality was, used as a dangerous weapon is a factual issue that is properly addressed in a complaint based on insufficient evidence. See, e.g. State v. Lewis, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702. Because Johnson does not raise the issue of sufficiency on appeal, any debate regarding the categorization of a BB gun is improper.
Johnson committed the offense during business hours, and surveillance footage shows other customers coming in and out of the store. While it is true that-Johnson brandished the BB gun only at Dobson, we cannot say that the trial court abused its discretion in finding a-risk of great bodily harm to more than one person, and thus an aggravating factor during sentencing.
■ Nor was it error for the court not to order a PSI. A trial court is not required to order a PSI. La. C. Cr, P. art. 875 A(1); State v. Bell, 377 So.2d 275 (La.1979); State v. Dukes, 46,029 (La.App. 2 Cir. 1/26/11), 57 So.3d 489, writ denied, sub nom., State ex rel. Dukes v. State, 2011-0443 (La.3/2/12), 83 So.3d 1033, While a PSI is helpful to a trial judge in reviewing the factors necessary in determining the proper sentence, it is not mandatory. In this case, the trial court was able to obtain information about Johnson’s education, employment record and criminal history from his trial testimony and criminal history report obtained during pretrial discovery.
The court discussed the sentencing factors that she applied with specificity and clarity. Furthermore,- the record reflects an adequate factual |g9basis for the sentence of 15, years at hard labor.
Even though the 15-year sentence might appear to be an amalgamation of the 10-year mandatory minimum under La. R.S. 14:64 and the additional five-year “tack on” under La. R.S. 14:64.3, there is nothing in the record to support the contention that it was in fact based on the additional firearm penalty under R.S. 14:64.3. The record clearly indicates that the state amended its original bill of information, which charged Johnson under R.S. 14:64.3, to charge Mm with only R.S. 14:64. Had the trial'court appeared to contemplate the five-year firearm “tack on” of R.S. 14:64.3 in sentencing, the case would be more analogous to this court’s holding in State v. Parker, 49,009 (La.App. 2 Cir. 5/15/14), 141 So.3d 839. Absent any evidence to support an assertion similar to that of Parker, this case follows the reasoning of Willis, wherein a court may consider factors in sentencing that are part and parcel of the element of the crime itself. Id. One of those factors was the fact that Johnson brandished a BB gun— which, as discussed, supra, could ostensibly be considered to be a dangerous weapon as defined by the Louisiana Legislature.
The facts oh the record strongly support our conclusion that Johnson’s sentence of 15 years at hard labor was not unconstitutionally excessive. As such, this assignment is without merit.
Johnson also alleges pro ■se that his counsel rendered ineffective assistance in violation of the Louisiana and United States Constitutions.
Johnson submitted a letter to this court in which he argues that he was denied effective assistance of counsel. Also, his motion for new trial and application for post-conviction relief complained of ineffective assistance. |anHe particularly alleges the following claims under the umbrella of ineffective assistance:
• Counsel withheld favorable evidence . .from Johnson, despite Johnson’s requests to view that evidence.
*1057 • Counsel visited Johnson only two times during the 10 months in which he was incarcerated prior to trial.
1 • Counsel threatened Johnson with bodily harm when he refused to change into civilian clothing prior to his October 20,2014, trial date.
• Counsel failed to strike the jury foreperson — Daryl. Adams — during voir dire. Apparently, Johnson told counsel that. Mr. Adams was Johnson’s math teacher in high school and there would be a conflict if Mr. Adams remained on the jury.
• Counsel ignored Johnson’s requests for counsel to, cross-examine Det. Miller and Devin Dobson during trial.
• Counsel twice called Johnson an “idiot” during closing arguments.
The Sixth Amendment to the U.S.-Constitution mandates the right of a defendant in a. criminal proceeding to effective assistance of counsel. State v. Wry, 591 So.2d 774 (La.App. 2 Cir.1991). A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under Strickland, supra, the defendant first must show that counsel made errors so serious that his performance was deficient. Second, he must show that counsel’s deficient performance prejudiced his defense. . .
As a general rule, a, claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Ellis, 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139.
An application for PCR shall not be entertained if the petitioner may appeal the conviction and sentence which he seeks to challenge, or if an appeal is pending. La. C. Cr. P. art. 924. This is because the petitioner must first exhaust whatever appellate rights and remedies he has prior to filing an application for PCR. State v. Carter, 463 So.2d 785 (La.App. 2 Cir.1985);
In this case, Johnson’s claims of ineffective assistance are more properly raised in an application for post-conviction relief in the trial court. The náture of his spécific ineffective assistance claims cannot be resolved on this record, and would likely require an evidentiary hearing under Art. 930. State v. Ellis, supra. Inasmuch as Johnson timely appealed his conviction and sentence with this court, but also filed an application for PCR on January 13, 2015, the latter was premature. After the judgment- appealed in this case becomes final, Johnson is free to file an application for PCR with the trial court, even though the trial court denied his January 2015 petition on March 19, 2015; Jóhnsbn will not be prejudiced under La. C. Cr. P. art. 930.4 as his first application was filed prematurely. ’.

Error Patent Review

Our error patent review revealed that Johnson filed a pro se motion for new. .trial on November 25, 2014, on grounds of ineffective assistance of counsel. The trial court did not rule on this motion prior to imposing sentence on December 1, 2014. Johnson’s third assignment of error alleges that the prematurity of. this appeal caused by the trial court’s failure to rule on the motion for new trial prior to imposition of sentence requires that .the sentence-be vacated and the matter remanded to the trial court. State v. Smith, 553 So.2d 934 (La.App.4 Cir.1989).
Our review of the record indicates that at the sentencing hearing on December 1, 2014, counsel for the defendant informed the court that it had filed on that day a motion for post-verdict judgment of acquit *1058 tal, alleging that the evidence was insufficient to sustain the conviction. Neither counsel, nor the defendant, who was present at that hearing, informed the court that the defendant had just filed a motion for new trial. The court recessed to consider counsel’s motion while other matters were taken up. When defendant’s case was called up again, counsel requested that the court rule on his motion prior to sentencing and that it would waive the delay. The court denied the motion for post-verdict judgment of acquittal.
Prior to sentencing, the court advised the defendant of the 24-hour delay in sentencing after a motion has been denied. The court asked counsel to confirm that it wanted to waive that delay in sentencing. Counsel confirmed the waiver. Again, the defendant did not speak up.
After advising the defendant of his right to, appeal both the conviction and sentence, the court imposed sentence. Ordinarily, the failure of a trial, court to rule on a motion for new trial constitutes an error patent and is reversible error. La. C. Cr. P. art. 853; State v. Winslow, 45,414 (La.App. 2 Cir. 12/15/10), 55 So.3d 910, writ denied, 2011-0192 (La.6/17/11), 63 So.3d 1033; State v. Burks, 47,026 (La.App. 2 Cir. 1/18/12).
After review, we conclude that the defendant was not prejudiced by the court’s failure to rule on the motion fox-new trial, and that vacating the sentence and remanding to the trial court for resen-tencing would result in a useless waste of judicial resources. First, as noted above, the defendant and | .^counsel had ample opportunity to ’inform the court at the sentencing hearing that the court had not ruled on the recently filed pro se motion for new trial, especially since counsel requested that the court rule on its motion for post-verdict judgment of acquittal prior to sentencing. We suspect- that counsel was unawai-e of the pro se motion because the defendant failed to inform him. Second, Johnson’s pro se motion for new trial is solely based on the claim that he received' ineffective assistance of counsel, which is not a proper ground for new trial. La. C. Cr. P. art. 851. We have repeatedly held that claims of ineffectiye assistance of counsel are best considered in an application for PCR, which, in fact, Johnson filed while this appeal was pending. Johnson’s specific allegations of ineffective as-sistancé cannot be resolved on this record. The proper procedural mechanism for investigating such claims would be to request an evidentiary hearing merited by a PCR application filed after the judgment becomes final. Third, since the trial court ultimately denied the motion for new trial on January 13, 2015, on grounds that Johnson did not allege any of the enumerated grounds for new trial under La. C. Cr. P. art. 851, the practical result of vacating-the sentence and remanding it to the trial court would be a useless exercise in- which the trial court would simply re-sentence Johnson based on the same facts and circumstances.
For these reasons, we conclude that this assignment is without merit.
CONCLUSION
For the foregoing reasons, Johnson’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. The original bill of information had a firearm enhancement charge that was -dropped.

. The record does not contain a copy of the complaint allegedly filed with the Bar Association.

. At this point, Judge Dorroh ordered Johnson to return downstairs and change out of his prison uniform and into civilian clothing before beginning voir dire.

. Santos told the trial court that he had an "A” average during two years of college, and no mental or physical problems.